JOAQUIN RIVERA, Appellant

v.

VERNE LA CROSSE, Defendant and Third Party Plaintiff,
and
CARIBBEAN TIRE, INC., Defendant

v.

VIRGIN ISLANDS NATIONAL BANK, Third Party Plaintiff

No. 73-1438

United States Court of Appeals
Third Circuit

Argued December 4, 1973

Filed January 31, 1974

JOSEPH L. COSTELLO, ESQ. (BRYANT, COSTELLO & BURKE), St. Croix, V.I., *for appellant*

EDWARD J. OCEAN, ESQ., St. Croix, V.I., *for appellee*

Before SEITZ, *Chief Judge*, MARIS and GIBBONS, *Circuit Judges*

## OPINION OF THE COURT

SEITZ, *Chief Judge*

Plaintiff, landowner, sued in the district court, inter alia, to terminate a lease with defendant La Crosse (hereinafter Tenant) and to evict the sublessee-defendant, Caribbean Tire, Inc. The lease in question, drafted by Tenant's attorney and executed in June 1963, was for a term of ten years. It provided that Tenant had an option to renew for an additional ten years. The lease identified the vacant plot of land belonging to plaintiff and recited that Tenant intended to erect a building to house a self-service laundry. The lease was to be null and void if either the following events occurred: (a) the Virgin Islands Planning Board refused to grant a special exception to permit the use of the area for a self-service laundry; or (b) Tenant was unable to construct or cause to be constructed a building for the operation of a self-service laundry on the premises.

Plaintiff assisted Tenant in obtaining a special exception from the Planning Board so that the property could be used as a self-service laundry. Tenant constructed the building, installed the necessary equipment and proceeded to operate a self-service laundry. After about seven years he ceased such operation for financial reasons. He sublet the premises to defendant Caribbean Tire, Inc. which, in the fall of 1970, began to use the premises for a general parts shop and tire repair business. The plaintiff gave written notice to both defendants to vacate the premises.

When the notice was ignored, this action was commenced.

The district court entered judgment in defendants' favor. The court ruled that the lease did not reflect an intention that only a self-service laundry should be operated on the premises. The court concluded, therefore, that Tenant was entitled to sublet the premises for other uses.

■ Although restrictions on use are said to be disfavored by law, such restrictions will be enforced if express or clearly implied in the lease. The restriction here is not express, but plaintiff contends that an intention to limit the use of the leased property to the operation of a self-service laundry is clearly implied in the lease. Certainly, the parties contemplated use of the property to operate a laundry. Paragraph 2 of the lease makes explicit Tenant's intention to use the property for such operation; paragraph 18 makes the lease arrangement contingent on the occurrence of certain events necessary to Tenant's operation of a self-service laundry on the property; paragraph 5 grants Tenant the right to cause connections to be made to sewer lines to dispose of waste incident to the operation of a self-service laundry; and paragraph 17 prohibits the plaintiff from allowing certain adjacent property, also owned by him, to be used for the operation of any other laundry.

■ It is not sufficient, however, that the parties intended the property to be used for a self-service laundry. To prevail, plaintiff must show that the parties intended that the land be used for no other purpose. We think that plaintiff has satisfied this burden. In addition to the lease provisions noted above, the lease specifies the type of financing to be used to obtain funds for construction of the building housing the laundry. Plaintiff agreed to execute a mortgage, limited in both amount and time, to enable Tenant to secure financing for construction of the laundry

building. Under the terms of paragraph 14, Tenant is allowed to sublet the building, "provided, however, that in the event that Tenant sells the self-service laundry, Tenant shall be relieved of all liability under this lease only if the mortgage is paid off and cancelled of record." This provision reflects an intention that the property only be used as a laundry; if the use of the property were not limited to operation of a laundry, this provision might result in relieving Tenant of liability to the plaintiff in the event he used the premises for another business and then sold it.

Any remaining doubt as to the parties' intent to restrict the use of the property is resolved by paragraph 11 of the lease. Paragraph 11 provides that for the renewal period Tenant would pay as rent "the greater of: (a) $100.00 per month, or (b) a figure equal to six (6%) per cent of the average monthly gross income received by Tenant in the operation of the self-service laundry during the last calendar year of the lease." We cannot see how this provision could be fully implemented except by the continued operation of a self-service laundry.

We conclude, therefore, that the provisions of the lease clearly evidence an intent that the leased premises were to be used solely for the operation of a self-service laundry. Tenant violated the lease agreement when he sublet the premises for another use.

The judgment of the district court will be reversed.